IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STRIKES FOR KIDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | C.A. No.:  3:17-cv-18 |
| v. | § | |
| | § | |
| NATIONAL FOOTBALL LEAGUE, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT NATIONAL FOOTBALL LEAGUE'S NOTICE OF REMOVAL

Defendant National Football League (the "NFL") hereby removes the above-captioned action from the County Court at Law No. 5 of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division, on the ground that the federal district court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because according to Plaintiff, adjudication of Plaintiff's claims requires the interpretation of the collective bargaining agreement ("CBA") between the NFL and the NFL Players Association (the "Players' Union").  In support of this Notice of Removal, the NFL respectfully shows the following:[1]

## INTRODUCTION

1.     The NFL is named as a defendant in a civil action filed in, and currently pending before, the County Court at Law No. 5 of Dallas County, Texas, captioned *Strikes for Kids v. National Football League*, Cause No. CC-16-02729-E (the "Lawsuit").[2]

---

[1] By removing this proceeding, the NFL does not waive, and shall not be deemed to have waived, any available defenses or rights.

[2] A complete copy of the record of the proceedings in this case in the County Court at Law No. 5 of Dallas County, Texas, and additional evidence supporting this Notice of Removal is set forth in the NFL's Appendix in Support of Defendant National Football League's Notice of Removal ("Appendix") [Docket No. 2], which is being filed concurrently herewith.  The NFL will cite to the Appendix as follows:  App. at [page #].

2.      The Lawsuit involves an event that Plaintiff organized to occur in July 2015 called "The Second Annual Las Vegas All-Star Classic Presented by the Palazzo," which allegedly was to involve the participation of twenty-five current NFL players (the "Event"). App. at 818 (Am. Pet. ¶ 11).   The Event was originally to take place at the "Strike Zone" bowling alley inside the Sunset Station Casino and was to be sponsored by the Palazzo Hotel & Resort Casino.   App. at 818 (Am. Pet. ¶ 11); App. at 515 (Allen Dep. at 48:9-14 (Plaintiff's founder and operator confirming that the Palazzo Hotel & Resort Casino was the presenting sponsor), 88:6-9, 92:2-22 (referencing representations to sponsors that the Event would be held at the Sunset Station Casino)).   Plaintiff's marketing materials for the Event promoted the planned participation of NFL players and confirmed that the venue for the Event was "inside the Sunset Station Casino" and that the presenting sponsor was the Palazzo Hotel & Resort Casino. App. at 512-22 (Allen Dep. at 72:19-75:11); App. at 607-08 (Pl.'s Press Release).

3.      The sole cause of action in Plaintiff's Original Petition—for fraud—arose from a statement an NFL senior labor relations attorney allegedly made to Plaintiff about the Event in June 2015.   App. at 816-19 (Am. Pet. ¶¶ 4, 12-14).   Specifically, the Original Petition alleged that the NFL attorney represented to Plaintiff that "it would be against NFL rules and regulations for NFL players to attend the charity event at the Strike Zone," and that if Plaintiff "did not move its event from the Strike Zone then players would not be permitted to attend the event."   App. at 4-5 (Orig. Pet. ¶¶ 14, 21).   Based on the facts Plaintiff presented to the NFL, including Plaintiff's own marketing materials, player participation in the Event would have violated the plain terms of Section 3(3) of the NFL's Gambling Policy, which prohibits players from:

> Participating in promotional activities or other appearances ***at or in connection with events*** . . . that are ***held at or sponsored by casinos or other gambling-related establishments***.

App. at 875-76 (NFL Gambling Policy § 3(3)); App. at 529 (Allen Dep. at 102:9-104:23); App. at 956-58 (NFL's June 18, 2015 e-mail to Pl.); *see also* App. at 818-19 (Am. Pet. ¶¶ 11-14).[3]

4.      The Original Petition alleged that the NFL attorney's opinion that player participation in the Event would have violated the Gambling Policy was "false," but it provided no explanation why.  App. at 5 (Orig. Pet. ¶ 20).  The Original Petition implied, however, that Plaintiff's claim of falsity hinged on a disagreement over whether the venue for the Event was in fact a "casino or gambling-related establishment" because, according to Plaintiff, the bowling alley purportedly was "separated from the casino [at the Sunset Station Casino] and a person could enter the Strike Zone without passing the sportsbook or the actual casino floor."  App. at 3-4 (Orig. Pet. ¶ 13).  Plaintiff subsequently confirmed this was its theory of falsity in various pleadings and discovery responses.  *See, e.g.,* App. at 710, 712 (Pl.'s Dec. 2, 2016 Resp. to NFL's 2d Mot. Protective Order at 2, 4 (asserting that the NFL's statement was false because the NFL had allegedly permitted other NFL players to participate in events in similar venues)); App. at 1077-78 (Pl.'s Sept. 29, 2016 Am. Resp. to NFL's Request for Disclosure at 2, Part C (disclosing that Plaintiff changed the Event's venue because "the NFL had determined that players' attendance at the event, if held at the Sunset Station, would violate the NFL gambling policy.")); App. at 1092-93 (Pl.'s Sept. 23, 2016 "expert report" at 3-4 (stating that Plaintiff's Event "was to be conducted at a Bowling Facility" that was "not a casino under Nevada law.")); App. at 562 (Allen Dep. at 234:23-235:10 (Plaintiff's founder and operator testified that he believed the NFL's statements were false because the Event "was a bowling event.  There's nothing at all that has to do with gambling or gaming when you're bowling.")).  On December

---

[3] After the NFL communicated its concerns to Plaintiff, Plaintiff voluntarily moved its Event to another venue— Brooklyn Bowl—and removed the Palazzo Hotel & Resort Casino as the presenting sponsor, after which Plaintiff held its Event with the participation of several NFL players.  App. at 535 (Allen Dep. at 125:8-128:25).  Plaintiff claims that it incurred unspecified damages of $100,000 or less.  App. at 816-17 (Am. Pet. ¶ 4).

28, 2016, Plaintiff filed an Amended Petition to add a cause of action for negligent misrepresentation based on the same alleged statement by the NFL attorney. App. at 821 (Am. Pet. ¶¶ 21-23).

5.      During a December 7, 2016 discovery hearing, however, Plaintiff offered a new fraud theory for the first time: that the NFL's alleged statement to Plaintiff was false because the NFL lacked authority under the CBA with the Players' Union to promulgate or enforce the Gambling Policy at all. According to Plaintiff's new theory, the Gambling Policy was not properly promulgated or enforceable because:

> *[T]here's a series of procedures under the Collective Bargaining Agreement that the NFL would have to go through in order to somehow have this separate policy that's enforceable.* So our question is *where does the NFL get the authority to create [the Gambling Policy].* It has to come from somewhere, and so far we've never seen that the NFL has any authority to create [the Gambling Policy].

App. at 1068 (Dec. 7, 2016 Hr'g Tr. at 16:8-16:18). Plaintiff's counsel also succinctly characterized its claims as dependent on the enforceability of the Gambling Policy under the CBA, stating that:

> [W]hat's drawn up in this case is *whether that gambling policy is enforceable* and whether the procedures were followed.

App. at 1068 (*Id.* at 14:15-17).

6.      Because Plaintiff's newly-articulated fraud theory would require an interpretation of the NFL's authority under the CBA with the Players' Union, Plaintiff's claims are completely preempted by federal law. *See infra.*

7.      This Notice of Removal is timely under 28 U.S.C. 1446(b) because it was filed within thirty days after the NFL's receipt of the transcript of the December 7 hearing at which the preempted federal-question claim was first clearly articulated by Plaintiff. *See* 28 U.S.C. §

1446(b)(3) (where, as here, the case is not initially removable, the case may be removed within 30 days after the defendant receives "other paper from which it may first be ascertained that the case is one which is or has become removable."); *Stiles v. Barnes Group, Inc.*, No. 3-01-CV-2750-H2002, 2002 U.S. Dist. LEXIS 8801, at *6 n.4 (N.D. Tex. May 16, 2002) ("[O]ral statements made in . . . court proceedings may constitute 'other paper' under [28 U.S.C. § 1446(b)].") (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (deposition testimony may serve as "other paper"); *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (where case not initially removable, removal period is triggered upon the defendant's receipt of an "other paper" that makes it "unequivocally clear and certain" that the case is removable).

## GROUNDS FOR REMOVAL

8.     This Court has federal-question jurisdiction over the Lawsuit because Plaintiff's claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301").  Complete preemption under Section 301 presents an exception to the well-pleaded complaint rule.  *See Moreno v. Campbell Taggart Baking Cos.*, Nos. 95-40353 and 95-40354, 1996 U.S. App. LEXIS 42708, at *9 n.1 (5th Cir. Jan. 19, 1996) (rejecting a "legally flawed argument that, because no Section 301 claim appeared on the face of [plaintiff's] well-pleaded complaint, no federal question existed so as to warrant removal") (citing *Baker v. Farmers Elec. Coop.*, 34 F.3d 274, 278 (5th Cir. 1994)).  "Where removal jurisdiction is predicated on the existence of a federal question, the federal question generally must appear on the face of the plaintiff's complaint."  *Baker*, 34 F.3d at 278 (5th Cir. 1994) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)).  However, the Fifth Circuit has noted that "[o]ne exception to this rule . . . occurs where an area of state law has been completely

preempted by federal law.   Controversies involving collective bargaining agreements, where [Section 301] provides the grounds for preemption, constitute such an area of [complete] preemption." *Id.* (internal citations omitted).   This is because "[t]he purpose behind [S]ection 301 preemption is to ensure that issues raised in actions covered by [S]ection 301 are decided in accordance with the precepts of federal labor policy." *Id.* (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)).

9.      The Supreme Court has accordingly held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Lueck*, 471 U.S. at 211.   Thus, Section 301 not only preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [a collective bargaining] agreement" but also claims that are "substantially dependent upon analysis of the terms of [a collective bargaining] agreement." *Id.* at 213, 220.

10.      Here, Plaintiff's fraud theory articulated for the first time in this case on December 7 will require an interpretation of the NFL's authority under the CBA with the Players' Union to promulgate and enforce the Gambling Policy.   To demonstrate fraud, Plaintiff will need to prove, among other things, that the NFL made a representation that was "false" and that the NFL either knew the representation was false or made the assertion recklessly without knowledge of its truth. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 537, 577 (Tex. 2001).   Thus, Plaintiff's claim, as articulated by Plaintiff's counsel, is "substantially dependent on analysis of a collective bargaining agreement" and therefore preempted by Section 301 because, according to Plaintiff's counsel, it will require the interpretation of "a series of

procedures under the Collective Bargaining Agreement" which, according to Plaintiff, "the NFL would have to go through in order to somehow have this separate [Gambling Policy] that's enforceable."[4]  App. at 1068 (Dec. 7, 2016 Hr'g Tr. at 16:8-16:18).  Specifically, according to Plaintiff's new theory, the determination of whether the NFL's statement to Plaintiff was false or whether it was made with the requisite intent to defraud would substantially depend on whether the NFL had authority to promulgate and enforce the Gambling Policy under the CBA.  *Id.* (Dec. 7, 2016 Hr'g Tr. at 16:8-16:18); *see*, *e.g.*, *Brown v. Keystone Consol. Indus., Inc.*, 680 F. Supp. 1212, 1218 (N.D. Ill. 1988) (fraudulent misrepresentation claim preempted because "any determination of plaintiffs' claim for fraudulent misrepresentation necessarily rests on an interpretation of the terms of the [collective bargaining] agreement").

11.     That Plaintiff is not a signatory to the CBA is immaterial for the purposes of Section 301 preemption.  Regardless of whether parties to a litigation are signatories to a CBA, "[t]he relevant question for preemption purposes is . . . whether Plaintiffs' state-law claims asserted against the [defendant] would require the court to apply or interpret the CBA."  *Atwater v. NFLPA*, 626 F.3d 1170, 1177-78 (11th Cir. 2010).  This is because "Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action." *Painting and Decorating Contractors Ass'n of Sacramento, Inc. v. Painters and Decorators Joint Comm. of the East Bay Counties, Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983) (quoting *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir. 1976)).  "Section 301(a) does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract [between an employer and a labor organization]."  *Id.*; *see also id.* at

---

[4] Two days after making these statements, on December 9, 2016, Plaintiff's counsel spent significant time deposing two NFL attorneys on the enforceability of the Gambling Policy and the NFL's authority to promulgate the Policy under the CBA.  *E.g.*, App. at 981 (Gardiner Dep. at 85:1-87:3); App. at 1033-35, 1037-38, 1049, 1058 (Birch Dep. at 45:2-48:20, 52:6-53:10, 54:12-18, 61:11-62:17, 63:2-66:12, 109:17-111:18, 145:2-146:17).

1070 n.2 ("[I]t is well settled that parties in a § 301 action do not necessarily have to be employers or labor organizations.").  Indeed, "to exclude non-employers from Section 301 CBA-related litigation 'would be contrary to the policy underlying § 301,' which is 'to promote the uniform interpretation of labor contracts in federal courts.'"  *Vanderzwan v. Pebblebrook Hotel Trust*, No. 16-cv-04415-LB, 2016 U.S. Dist. LEXIS 150708, at *18 (N.D. Cal. Oct. 31, 2016) (quoting *Painting and Decorating Contractors Ass'n of Sacramento, Inc.*, 707 F.2d at 1071-72).  By disputing the NFL's authority to promulgate and enforce the Gambling Policy under the CBA, Plaintiff raised a federal question under Section 301, notwithstanding Plaintiff's status as a non-signatory to the CBA.

## COMPLIANCE WITH REMOVAL PROCEDURES

12.     This Notice of Removal is properly filed in the United States District Court for the Northern District of Texas, Dallas Division, because the County Court at Law No. 5 of Dallas County, Texas—where Plaintiff filed the Lawsuit—is located in this federal judicial district and division.

13.     In accordance with 28 U.S.C. § 1446(a) and Local Rule 81.1, attached to the Appendix accompanying this Notice of Removal is an index of all documents filed in the state court and a copy of each document filed in the state court.  In addition, the state court docket sheet, a Civil Cover Sheet, Supplemental Civil Cover Sheet and Certificate of Interested Persons accompany this Notice pursuant to Local Rules 3.3(a) and 81.1.

14.     Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy will be filed with the Clerk of the County Court at Law No. 5 of Dallas County, Texas, as required by 28 U.S.C. § 1446(d).  This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

WHEREFORE, Defendant National Football League hereby removes this action from the County Court at Law No. 5 of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division.

January 3, 2017

/s/ *R. Thaddeus Behrens*
R. Thaddeus Behrens, TBN 24029440
thad.behrens@haynesboone.com
Charles M. Jones II, TBN 24054941
charlie.jones@haynesboone.com
Alex R. Stevens, TBN 24075120
alex.stevens@haynesboone.com
Jamee M. Cotton, TBN 24087349
jamee.cotton@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000
(214) 651-5940 (Facsimile)

**ATTORNEYS FOR DEFENDANT**
**NATIONAL FOOTBALL LEAGUE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following counsel of record via email and U.S. Mail in accordance with the Federal Rules of Civil Procedure on this 3rd day of January, 2017:

Julie Pettit
David B. Urteago
THE PETTIT LAW FIRM
3710 Rawlins, Suite 1050
Dallas, Texas 75219
Telephone: (214) 329-0151
Facsimile: (214) 320-4076
jpettit@pettitfirm.com
durteago@pettitfirm.com

Michael K. Hurst
John Franklin Guild
Michael T.E. Kalis
LYNN PINKER COX HURST
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
mhurst@lynnllp.com
jguild@lynnllp.com
mkalis@lynnllp.com

/s/ *Charles M. Jones II*
Charles M. Jones II