UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STRIKES FOR KIDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-0018-B |
| | § | |
| NATIONAL FOOTBALL LEAGUE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand. Doc. 5. At issue is whether Defendant's removal of this case from state court was timely within the 30-day removal window of 28 U.S.C. § 1446(b). Plaintiff maintains that the removal, which occurred more than 30 days after the filing of the state court petition, was untimely and moves for remand. Defendant counters that the removal was timely under § 1446(b)(3)'s "other paper" provision. The Court agrees with Defendant and, for the reasons that follow, **DENIES** Plaintiff's Motion.

## I.

## BACKGROUND[1]

Plaintiff Strikes for Kids filed this lawsuit in Texas state court on May 31, 2016, alleging a claim of fraud against Defendant National Football League (NFL). Doc. 1, Notice of Removal. Plaintiff's fraud claim was based on alleged statements Defendant and its representatives made regarding a charity bowling event. Doc. 2-1, App. in Supp. of Def.'s Notice of Removal, Ex. 1, Pl.'s

---

[1] The Court draws its factual account from the parties' initial pleadings as well as from the briefing on the Motion before the Court today.

- 1 -

Orig. Pet. ¶¶ 19–20 [hereinafter Pl.'s Orig. Pet.]. Plaintiff planned to hold an event at the "Strike Zone, a bowling alley that is a part of the larger Sunset Station Hotel & Casino complex" in Las Vegas, Nevada. *Id.* ¶ 11. But before the event, Defendant allegedly told Plaintiff that it would be in violation of the NFL Gambling Policy[2] for NFL players to attend, so Plaintiff "needed to change the venue of the charity event." *Id.* ¶ 14. In response, Plaintiff moved the event to a different venue approved by Defendant. *Id.* ¶ 15. Plaintiff alleges that this change in venue caused it to suffer lost revenue and prevented it from fulfilling other obligations. *Id.*

Plaintiff's theory of why Defendant's statement—that NFL players' attendance at Strike Zone would violate the NFL Gambling Policy—was fraudulent or false has shifted throughout the litigation. In Plaintiff's Original Petition, it simply stated that Defendant's representation was "false" with no further explanation. *See* Doc. 2-1, Pl.'s Orig. Pet. ¶ 20. In Defendant's Notice of Removal, by contrast, it asserted that the Original Petition implied that Plaintiff's claim of falsity hinged on a disagreement over whether the Strike Zone was a "casino or gambling-related establishment." Doc. 1, Notice of Removal ¶ 4. If the Strike Zone was not a "casino" as defined by the Gambling Policy, then NFL players' attendance would not have violated the Gambling Policy, and Defendant's assertion to the contrary would have been false. Defendant argued that this theory was later confirmed through Plaintiff's subsequent pleadings and discovery responses. Doc. 1, Notice of Removal ¶ 4.

Defendant asserts that Plaintiff's theory shifted at a December 7, 2016, discovery hearing in

---

[2] Plaintiff's Original Petition does not reference the Gambling Policy specifically. Instead, Plaintiff alleges that the NFL representative stated that NFL players' attendance would "be against NFL rules and regulations." Doc. 2-1, Pl.'s Orig. Pet. ¶ 14. But through the parties' subsequent pleadings, it is evident that Plaintiff's reference is to the NFL Gambling Policy. *See* Doc. 1, Notice of Removal ¶ 3.

state court. *Id.* ¶ 5. At the hearing, Defendant argues, Plaintiff offered a new fraud theory for the first time: The NFL's alleged statement was false because the NFL lacked authority under the Collective Bargaining Agreement (CBA) with the Players' Union to promulgate or enforce any part of the Gambling Policy. Doc. 8, Def.'s Resp. 7. Therefore, Defendant's statement that players' attendance would violate the Gambling Policy was false because Defendant had no authority to enforce any rule at all under the Gambling Policy.

Plaintiff appears to agree that its fraud claim is based on the theory that the NFL lacks authority to enforce the Gambling Policy. *See, e.g.*, Doc. 5, Pl.'s Mot. to Remand 2. From the pleadings, though, it does not appear that this theory supplants the original fraud theory. Instead, it appears that the "new fraud theory" is, in fact, an alternative fraud theory. So, the Court construes Plaintiff's argument as alleging Defendant's statements to be false because: (1) Defendant didn't have the authority to promulgate the Gambling Policy at all (the New Fraud Theory); and (2) if it did have the authority, then the Strike Zone was falsely characterized as a "casino" (the Old Fraud Theory).[3]

Defendant filed its Notice of Removal with this Court on January 3, 2017. Doc. 1, Notice of Removal ¶ 4. Defendant removed the case to this Court based federal question jurisdiction. *Id.* ¶ 8. Defendant reasoned that Plaintiff's New Fraud Theory required an interpretation of the NFL's authority under its CBA with the Players' Union, so Plaintiff's claims would be completely preempted by Section 301 of the Labor Management Relations Act (LMRA). *Id.* ¶¶ 6, 8.

---

[3] While the Court construes Plaintiff's argument as alleging two alternative theories, for the purpose of simplification, the Court will refer to them as the Old Fraud Theory and the New Fraud Theory because that is how the parties refer to them in their briefing.

On January 5, 2017, Plaintiff filed its Motion to Remand arguing that Defendant's Notice of Removal was untimely because the New Fraud Theory—requiring an interpretation of the CBA—was present from the time the case was filed in May 2016, and therefore Defendant's 30-day removal window had passed long before January 2017. Doc. 5, Pl.'s Mot. to Remand 1. Defendant responded and argued that it timely removed the case within 30 days of learning that Plaintiff's state-law claims were completely preempted by federal law. Doc. 8, Def.'s Resp. And Plaintiff has replied. Doc. 10, Pl.'s Reply. Thus, Plaintiff's Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

Any action in state court "of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court." 28 U.S.C. § 1441(a). Defendant removed this case from state court based on federal question jurisdiction under 28 U.S.C. § 1331. District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This, however, raises "significant federalism concerns" because removal effectively "deprive[s] the state court of an action properly before it." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). As a result, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281–82; *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

"Removal based on federal question jurisdiction is determined by reference to the well-

pleaded complaint." *Eggert v. Britton*, 223 F. App'x 394, 397 (5th Cir. 2007) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("The presence or absence of [federal-question] jurisdiction is governed by the well-pleaded complaint rule, under which federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (internal quotations omitted)).

In certain instances, however, "complete preemption" operates as a kind of exception to the well-pleaded complaint rule because a "plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366–67, 367 n.2 (5th Cir. 1995) (quoting 14A Wright & Miller, Federal Practice and Procedure § 3722 (2d ed.)). Here, Defendant argues not that a federal question is present on the face of Plaintiff's Original Petition, but rather that Plaintiff's claims are completely preempted by § 301 of the LMRA.

To timely remove a case, a defendant must file a notice of removal within 30 days after the receipt of the initial pleading. 28 U.S.C. § 1446(b)(1). But if a case is not removable based on the initial pleading, a defendant may still remove a case within 30 days after receiving "a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3) (emphasis added). The Fifth Circuit has indicated that removal based upon receipt of "other paper" requires a voluntary act by the plaintiff— as opposed to actions of the defendant or the court. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961)). "The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." 14C Wright & Miller, Federal Practice

and Procedure § 3731 (4th ed.).[4] Here, Defendant argues that removability was triggered by its receipt of "other paper"—specifically, Plaintiff's counsel's statements at a hearing on December 7, 2016—when Defendant first learned that Plaintiff's state-law claim was preempted by the LMRA.

"In most cases, when courts look to 'other paper' to ascertain removability, courts are clarifying that diversity jurisdiction has been established," not federal question jurisdiction. *Eggert*, 223 F. App'x at 397. The Fifth Circuit in *Eggert*, however, has acknowledged that "[u]nder limited circumstances, courts have looked to 'other paper' to establish federal question jurisdiction, such as to clarify that a plaintiff's state law claim is one that would be preempted by federal law." *Id.* In other words, for removal based on "other paper" to be proper and consistent with the well-pleaded complaint rule, the "other paper" cannot be used to interject a new federal claim, but instead must be used to clarify that the plaintiff's existing claims are federal in nature. *See id.* at 397–98. As Defendant's argument hinges on "other paper" establishing federal question jurisdiction based on complete preemption, the standard set forth in *Eggert* applies.[5]

---

[4] For example, courts have held the following to be "other paper": (1) deposition testimony; (2) statements made by counsel at scheduling conferences; and (3) oral statements made at a hearing. *S.W.S. Erectors,* 72 F.3d at 494 (finding a transcript of deposition testimony to constitute "other paper"); *Hydro-Action, Inc. v. James*, 233 F. Supp. 2d 836, 839 (E.D. Tex. 2002) (finding witness testimony at a hearing to constitute "other paper" for removal purposes); *Stiles v. Barnes Grp., Inc.*, No. 3:01-cv-2750-H, 2002 WL 1298734, at *3 n.4 (N.D. Tex. June 11, 2002) (finding plaintiff's initial disclosures to constitute "other paper"); *see also* 14C Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.) (citing to numerous cases where discovery documents, deposition testimony, answers to interrogatories, and correspondence between opposing counsel were found to constitute "other paper").

[5] The Court notes that Defendant uses the standard established in *Bosky v. Kroger, LP*, that requires "other paper" to make removal "unequivocally clear and certain." *See Bosky v. Kroger, LP*, 288 F.3d 208, 209–11 (5th Cir. 2002). But the Fifth Circuit in *Bosky* was discussing the standard in the context of determining the amount in controversy requirement for diversity jurisdiction, not federal question jurisdiction. *See id.*

## III.

## ANALYSIS

In its Motion to Remand, Plaintiff argues that removal was untimely because the New Fraud Theory has been present since the suit's inception, and stated in various briefings, depositions, and hearings throughout the case; therefore, Defendant's 30-day time limit for removal has passed. Doc. 5, Pl.'s Mot. 3–4.[6]

Defendant, for its part, argues that the initial pleading presented no federal question on its face and that at no other time did Plaintiff make it "unequivocally clear and certain" that removal was proper. Doc. 8, Def.'s Resp. 9–12 (citing *Bosky*, 288 F.3d at 209–11). Instead, Defendant maintains that it did not receive any "unequivocally clear and certain" "other paper" that established removability based on federal question jurisdiction until the December 7, 2016, discovery hearing. *Id.* at 12.[7] For the reasons that follow, the Court agrees[8] with Defendant and finds that removal was

---

[6] In the alternative, Plaintiff posits, arguably for the first time in its Reply, that its claims are not preempted by the LMRA, and thus removal was improper because the Court lacks federal question jurisdiction. Doc. 10, Pl.'s Reply 3–5. The Court finds Plaintiff's newly-raised argument problematic because the parties focused almost exclusively on the timeliness issue and gave very little attention to whether complete preemption operates in this case. It appeared that the parties were in agreement about preemption until Plaintiff made clear in its Reply that it assumed the Court had jurisdiction only because it believed the alleged untimeliness of the removal was so clear. Due to the extensive briefing on the timeliness issue, and almost non-existent briefing on complete preemption, the Court will approach Plaintiff's Motion to Remand under the assumption that the New Fraud Theory triggers complete preemption under the LMRA because interpretation of the CBA is inextricably intertwined with Plaintiff's state-law claim. The Court does not find it appropriate, however, to operate under this assumption for the remainder of the case. Therefore, in a subsequent order, the Court will request supplemental briefing on the preemption issue and address it separately. If the Court ultimately does not have subject matter jurisdiction over this case, then it will be remanded.

[7] Because Defendant removed this case on the basis of federal question jurisdiction, the parties do not argue, and the Court does not discuss, any basis for diversity jurisdiction.

[8] The Court holds in this manner notwithstanding the fact that Defendant used a different standard in making its arguments. Defendant cites to the standard established in *Bosky* that requires "other paper" to

proper.

As discussed above, the Court assumes, for the purposes of this Motion, that the New Fraud Theory triggers complete preemption, which therefore confers federal question jurisdiction. The only issue, then, is *when* the removability time-clock was triggered. Plaintiff points to specific examples throughout the state-court case and argues that each one would have made the case removable before the December 7, 2016, hearing. The Court addresses each example below.

A.      *The Original Petition - May 31, 2016*

Plaintiff first maintains that the New Fraud Theory has been present since the time the suit was first filed. Doc. 5, Pl.'s Mot. to Remand 1. But Plaintiff does not argue that the Original Petition required interpretation of the CBA on its face or even that any allegation in the Original Petition was connected to the CBA. Instead, Plaintiff points to Defendant's attempt to transfer the case to the venue of a similar pending state-court case due to the factual similarities between the cases. *Id.* at 3, 7. When Defendant moved to transfer venue, it argued that Plaintiff's case was "part of a coordinated effort" by a certain lawyers "to challenge the NFL's enforcement of its Gambling Policy with respect to NFL player participation at promotional events held at casinos or gambling related establishments." *Id.* at 7 (citing Doc. 2, Def.'s App. 17). Plaintiff argues that Defendant's motion demonstrates that it was aware that Plaintiff's fraud claim depended on an interpretation of the CBA at the time Plaintiff filed its Original Petition. *See id.*

Defendant responds that it could not have removed the case at filing because Plaintiff

make removal "unequivocally clear and certain." *See Bosky,* 288 F.3d at 209–11. As discussed above, the Court finds that the analysis used in *Eggert,* which dealt with the "limited circumstances" where "courts have looked to 'other paper' to establish federal question jurisdiction" is more applicable in this case. *See* 223 F. App'x at 397.

included only a state-law fraud claim in its Original Petition and failed to make a claim that was substantially dependent on an interpretation of the CBA. Doc. 8, Def.'s Resp. 1. Defendant also points out that Plaintiff failed to explain any theory of why statements made by NFL representatives were false, let alone one based on the CBA. *Id.* at 5. Nor did Plaintiff explicitly mention the CBA or the Gambling Policy. So from the face of the Complaint, there was no indication of a federal question according to Defendant. *See id.* Addressing Plaintiff's contention that Defendant's motion to transfer venue was indicative of Defendant's knowledge of a federal question, Defendant argues that: (1) its motion to transfer was not on the "face" of the Original Petition, so it is irrelevant[9]; and (2) its subjective knowledge from outside the initial pleading does not render the action removable.[10] *Id.* at 12 n.13.

The Court agrees that on the face of Plaintiff's Original Petition, there is no indication of a federal claim. Plaintiff states a claim only for state-law fraud; it fails to explicitly reference the CBA or the Gambling Policy; and it is not even clear what Plaintiff's theory of fraud is. Also, there is no indication that an interpretation of the CBA would be inextricably intertwined with the state-law fraud claim thereby triggering complete preemption.

Furthermore, the Court agrees with Defendant's argument that its motion to transfer is irrelevant to determining whether the case was removable based on the Original Petition. Even if it

---

[9] Defendant cites to 28 U.S.C. § 1446 to argue that removability is determined by the initial pleading. Because the motion to transfer venue was not part of that, it cannot be used to argue the case was removable at the time of the initial pleading. Doc. 8, Def.'s Resp. 12 n.13.

[10] Defendant cites to *Green v. Geico Gen. Ins. Co.*, where a court determined that for purposes of diversity jurisdiction, a defendant's subjective knowledge of the amount in controversy from outside the initial pleading is irrelevant to determining when a case became removable. No. 15-3968, 2015 WL 5971760, at *3 (E.D. La. Oct. 14, 2015); Doc. 8, Def.'s Resp. 12 n.13.

was relevant, it is not clear from the motion to transfer that Defendant knew Plaintiff's fraud claim relied on an interpretation of the CBA. In the motion to transfer Defendant specifies that the two state court cases were similar in that they both involved a litigation strategy "to contest the application of the *same provision* of the NFL Gambling Policy to events held at or sponsored by such venues." Doc. 2, Def.'s App. 19 (emphasis added). This argument indicates that Defendant may have been alerted to the fact that the Gambling Policy was at issue, but challenging the application of a specific provision of the Gambling Policy is a markedly different strategy than Plaintiff's current one of challenging the NFL's authority altogether. Therefore, the Court concludes that the case was not removable at Plaintiff's filing of the Original Petition.

B.  *Plaintiff's Response to a Motion for Protective Order - August 23, 2016*

Even if the Original Petition did not trigger removability, Plaintiff contends that its briefing on Defendant's motion for a protective order in state court did. Doc. 5, Pl.'s Mot. to Remand 3–4. Plaintiff noticed the deposition of NFL Commissioner Rodger Goodell in August 2016, which prompted Defendant to file a motion for a protective order. *Id.* Defendant sought to quash the deposition under the apex doctrine because it argued that Goodell had no unique or superior knowledge of any facts relevant to the case. Doc. 8, Def.'s Resp. 6.

Plaintiff claims that its response to Defendant's motion for a protective order constitutes "other paper" that triggered removability on August 23, 2016. Doc. 5, Pl.'s Mot. to Remand 4. Plaintiff argues that in its response, it made the same arguments that it did at the December 7, 2016, hearing. *Id.* Specifically, Plaintiff argued in its response that:

> Defendant's so-called gambling policy, to the extent it is even enforceable, states that violations and disciplinary action will be decided by one person—the Commissioner.

*Id.* (citing Doc. 2, Def.'s App. 274). Further, Plaintiff argued that it should be allowed to depose Goodell because he was "the only person who can interpret and enforce the gambling policy" and "his knowledge is sufficient to justify an apex deposition." Doc. 2, Def.'s App. 278. Plaintiff reasoned that Goodell must have had first-hand knowledge of Plaintiff's event because a determination that it was in violation of the Gambling Policy had to have been made by Goodell. *Id.*

Defendant disagrees with Plaintiff's contention that the August 23, 2016, response constitutes "other paper" that would have triggered the removability time-clock. Specifically, Defendant argues that Plaintiff's statements about the Gambling Policy and the CBA were made solely to overcome the apex doctrine. Doc. 8, Def.'s Resp. 2. Defendant reasons that Plaintiff's references to the Gambling Policy and CBA did not make it clear that adjudication of Plaintiff's fraud claim would involve an interpretation of the CBA. *Id.* In its Reply, Plaintiff does not address Defendant's argument about the limited purpose for which Plaintiff referenced the CBA and Gambling Policy in its state court response. *See* Doc. 10, Pl.'s Reply.

The Court finds that Plaintiff's August 23, 2016, response does not constitute an "other paper" that would trigger removability. As discussed above, in the context of federal question jurisdiction, "other paper" can trigger removability when it clarifies that an existing claim would be preempted by federal law. *See Eggert*, 223 F. App'x at 397. Plaintiff's state court response does not clarify that its fraud claim would require an interpretation of the CBA. As Defendant points out, Plaintiff references the CBA and the Gambling Policy to tie Goodell into the facts of the case and justify an apex deposition.

Furthermore, Plaintiff's argument about Goodell's position could reasonably be applied in the context of the Old Fraud Theory. If that theory is that the NFL representative fraudulently stated

that the original venue was a "casino or gambling-related establishment" when it may have been misclassified, then it is conceivable that the person in charge of interpreting the policy and making the determination of what constitutes a "casino or gambling-related establishment" would be a fact witness. It does not follow, then, that Plaintiff's argument about Goodell's responsibility to enforce the gambling policy clarified that Plaintiff's fraud claims was federal by nature. Simply referencing the CBA or Gambling Policy is not enough to clarify that Plaintiff's fraud claim depended on an interpretation of the CBA.

C.  *Hearing on the Motion for Protective Order - August 29, 2016*

Next, Plaintiff asserts that the arguments made at the August 29, 2016, hearing on Defendant's motion for a protective order constitute "other paper." Doc. 5, Pl.'s Mot. to Remand 4. That hearing included the following statement:

> Your Honor, when you look at the NFL's collective bargaining agreement, it's very clear in regard to the enforcement of the policy there's one person and no designee that can make an ultimate enforcement of the policy. This is from Article 46, Section 1(a), where it says it's the commissioner and only the commissioner that can enforce the policy.

*Id.* at 4 n.1 (citing Doc. 2, Def.'s App. 759). Plaintiff reasoned that this authority made its proposed deposition of Goodell a "factual deposition because he's a fact witness, not an apex deposition." Doc. 2, Def.'s App. 760. Plaintiff also points to the PowerPoint presentation that was created for the hearing and notes that one of the slides had an excerpt from the CBA. Doc. 6, Pl.'s App. 8–9.

Defendant disagrees and again argues that Plaintiff's statements only set forth why Plaintiff contended that the Commissioner would have knowledge of relevant facts and was subject to a deposition. Doc. 8, Def.'s Resp. 15. Defendant further contends that the PowerPoint slide referencing the CBA simply supported Plaintiff's theory that only the Commissioner has the authority to

discipline players for violations of the Gambling Policy. *Id.* Defendant argues that this provision of the CBA has nothing to do with the NFL's authority to promulgate the Gambling Policy. *Id.* Plaintiff fails to respond to these arguments in its Reply. *See* Doc. 10, Pl.'s Reply.

The Court agrees with Defendant and finds that the August 29, 2016, hearing and PowerPoint are not "other papers" triggering removability. Similar to the response, the excerpts from the hearing do not clarify that Plaintiff's claim was federal by nature. Plaintiff's statements are again focused on establishing that Goodell was a fact witness because of his authority to enforce the Gambling Policy. While Plaintiff specifically mentioned the CBA, it appears that the purpose was to pinpoint the responsibility of interpretation on Goodell and argue that he could not delegate that responsibility, so any question as to the application of the Gambling Policy must involve Goodell. Whether the NFL could even enforce the Gambling Policy is an entirely separate question that was not addressed by the excerpts or the PowerPoint.

D.  *Notice of Depositions - November 7, 2016*

Aside from the dispute over Goodell's deposition, Plaintiff also claims that when it noticed the deposition of two other representatives of the NFL, the notices contained topics addressing the enforceability of the Gambling Policy, clearly implicating the CBA and, consequently, removeability. Doc. 5, Pl.'s Resp. 4.

Defendant points out that in making its argument, Plaintiff failed to identify which of the 21 deposition topics addressed the enforceability of the Gambling Policy, and furthermore, that none of the deposition topics refer to the CBA or the NFL's authority to promulgate it. Doc. 8, Def.'s Resp. 16. Defendant considers the two deposition topics that could conceivably be connected. Plaintiff sought to question an NFL witness regarding "any enforcement or non enforcement of the NFL's

gambling policy in the last 5 years" as well as communications "concerning the NFL's internal policies regarding approval for players to attend events at casinos." *Id.* Defendant argued that these topics were directed at learning the NFL's past practices in enforcing the Gambling Policy and were not directed at questioning the NFL's authority to promulgate and enforce the Gambling Policy. *Id.* Plaintiff fails to respond to these arguments in its Reply. *See* Doc. 10, Pl.'s Reply.

The Court finds that the November 7, 2016, deposition notices do not constitute "other papers" triggering removability. Plaintiff did not direct the Court to any specific statements made in the deposition notices, and instead just stated that they contained topics addressing the enforceability of the Gambling Policy. *See* Doc. 5, Pl.'s Mot. to Remand 4. Defendant directed the Court to the statements that Plaintiff was likely referring to, and those statements do not clarify that Plaintiff's fraud claim relied on an interpretation of the CBA. The Court agrees with Defendant in that the deposition topics Plaintiff listed refer to the past enforcement of the Gambling Policy, not whether the Gambling Policy could be enforced at all.

E.   *Discovery Hearing - December 7, 2016*

The Court finds that it was not until the December 7, 2016, discovery hearing that Plaintiff clarified that its theory was federal in nature. At the hearing, Plaintiff stated, "[W]e may be disputing that the gambling policy itself is even enforceable at all. To the extent that it is enforceable, it is our position that the procedures within that gambling policy were not followed in this case." Doc. 2, Def.'s App. 1067. The state court judge later asked Plaintiff, "[W]hat's your argument that the gambling policy is not enforceable?" Plaintiff replied:

> [T]here's a series of procedures under the Collective Bargaining Agreement that the NFL would have to go through in order to somehow have this separate policy that's enforceable. So our question is where does the NFL get the authority to create this

> eight-page policy. It has to come from somewhere, and so far we've never seen that the NFL has any authority to create this NFL gambling policy.

Doc. 2, Def.'s App. 1068. After Plaintiff explained the theory, Defendant responded by stating, "Enforceability is not an issue in this case." *Id.* Defendant reasoned that "[w]hether or not this policy is enforceable has no bearing on whether [the NFL representative's] statement that if [a player] were to participate in this event, it would violate the gambling policy. That has to do with based on his interpretation of the terms. That has nothing to do with enforceablity." *Id.* at 1068–69.

To be sure, Plaintiff has mentioned the CBA and the Gambling Policy throughout this case. Before the December 7, 2016, hearing, however, Plaintiff's focus on the CBA and the Gambling Policy was for the purpose of tying Goodell into the litigation as a fact witness with first-hand knowledge, thereby justifying a deposition. At the December 7, 2016, hearing, though, Plaintiff clearly stated that the enforceabilty of the policy, apart from Goodell, may be called into question. The shift in argument is apparent by Defendant's immediate reaction in stating that enforceability is not an issue in the case.

Thus, the Court determines that the 30-day period for removing the case to federal court did not begin to run until December 7, 2016—the date Plaintiff clarified that their state-law fraud claim depended on an interpretation of the CBA, which made the claim federal in nature. *See Eggert*, 223 F. App'x at 397–98. Defendant filed its Notice of Removal with this Court on January 3, 2017. Therefore, removal was timely under 28 U.S.C. § 1446(b)(3).

### IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Emergency Motion to Remand.

An order requesting additional briefing concerning complete preemption will follow.

**SO ORDERED.**

**SIGNED: May 24, 2017**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE